MAYME BALDER v. ZENITH FURNACE COMPANY.[1]

February 14, 1908.

Nos. 15,518—(225).

**Verdict—Evidence.**

The plaintiff's intestate lost his life, while working as an employee of the defendant in one of its coal bins, by being smothered by a large mass of coal therein. This is an action to recover damages for his death, on the ground that it resulted from the negligence of the defendant in failing to properly instruct and warn him of the dangers and risks connected with the work he was required to do. *Held*, that the evidence was sufficient to sustain the verdict for the plaintiff, and that the trial court committed no reversible errors, either in its rulings on the admission of evidence or in its instructions to the jury.

Action in the district court for St. Louis county by the administratrix of the estate of Bernard Balder, deceased, to recover $5,000 for the death of her intestate. The case was tried before Cant, J., and a jury which returned a verdict in favor of plaintiff for the sum demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

The alleged misconduct of plaintiff's attorney was in stating in his opening address to the jury that after the accident a line of electric lights was put down in the bin.

[1] Reported in 114 N. W. 948.

The defendant's first request to charge the jury was as follows: "If you find from the evidence that the plaintiff's intestate, Mr. Balder, knew or ought to have known that when he stepped out upon or was working upon this crust of coal at the time of the accident that the coal was liable and might cave in with him or fall down under him, and that on account thereof he might receive injuries to himself, that then and in that event the plaintiff in this action cannot recover, and your verdict must be for the defendant.".

*Howard T. Abbott,* for appellant.

*John Jenswold, Jr.,* for respondent.

START, C. J.

The defendant at the times herein stated was a manufacturer of coke at West Duluth, where it had its plant, a part of which was a coal bin, in which fine coal to supply its ovens was kept. On January 19, 1906, the plaintiff's intestate, an employee of the defendant, while he was working in the bin lost his life by being smothered by a large mass of coal therein. This action was brought in the district court in the county of St. Louis to recover damages on account of his death, on the ground that the defendant negligently ordered the deceased to work in a dangerous place without properly instructing and warning him as to the risks and dangers connected therewith. The answer put in issue the alleged negligence of the defendant. Verdict for the plaintiff for $5,000. The defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

1. The defendant claims there was no evidence in the case warranting a verdict for the plaintiff. Evidence was received on the trial tending to establish these facts:

The bin was thirty by thirty six feet at the top, thirty feet deep, and would hold some seven hundred tons of coal. In the bottom of the bin there were spouts which could be opened by levers to let the coal run into small cars by means of which it was carried to the ovens. There was a ladder on the inside of the bin, consisting of pieces of inch boards nailed to 2x4's, which were fastened to the side of the bin. It was dark in the bin. The coal run into the bin was very fine, and was liable to be more or less damp, become sticky, clog, and form a crust, so that when the coal below the mass held in place by the crust

was run out of the bin there would be left a vacant space between the bottom of the bin and such mass. If, when this occurred, the crust could not be broken by running iron rods through the spouts into the bottom of the bin, it was necessary for some one to go into the bin from the top, and down the ladder to the crust, and break it by using an iron bar. The usual method of breaking the crust was for the person doing it to stand on one rung of the ladder, which afforded him a place to stand on of only one inch in width, keeping one hand hold of the ladder, and with the other use the bar to break the crust; but if it could not be done in this way, and he was told to go upon the coal, he was secured with a rope. On the night of the accident, about midnight, a crust had formed in the bin, and the coal below had been drawn out, so that there was at the time a vacant space between the bottom of the bin and the mass of coal held back by the crust some ten feet in height. Such being the conditions in the bin and such the method of breaking the crust, all of which were unknown to the deceased, and when he was at his accustomed place of work at the screens assorting and loading the coal after it left the bin, the defendant's foreman called him to go with him (the foreman) up to the bin, telling him that he had a job for him. He obeyed, and when they got to the bin they found the coal on the surface a compact mass and smooth as the floor.

According to the testimony of the foreman, the deceased went down the ladder into the bin first, called for a lantern, which he hung on a nail placed in the wall of the bin, and then, holding onto a rung of the ladder with his left hand, with his left foot on a rung and his right foot on the coal, he commenced pounding the crust with the bar in his right hand; but the crust did not break. He then let go his hold on the rung, and with both hands, still keeping one foot on the rung and the other on the coal, he continued his efforts to break the crust, when the foreman said to him: "Ben, don't get out there too far. This thing is undermined. You are liable to go down any time." The foreman further testified that "Mr. Balder didn't pay no attention to what I said. He continued breaking down the coal and resting one foot on the ladder, and he poked there with this bar for probably two minutes, when the coal gave away with him. Having one foot on the ladder and other on the coal, the foot that he had

on the coal—why, the coal gave way and he went down. As he did, I made a grab for him—I was standing right beside of him—and couldn't hold him." He was a strong, sober, industrious, and intelligent man, twenty four years of age. He is survived by a young widow, twenty three years of age, the plaintiff, and an infant child born since his death.

It is unnecessary to discuss the evidence in detail, for we are clearly of the opinion that it was sufficient to sustain the verdict. The place into which the deceased was taken by the defendant's representative, without any warning or instruction, was in fact one of great peril to one who had no knowledge of its concealed dangers. The negligence of the defendant in not giving such warning is well established by the evidence. The serious question is whether the deceased was guilty of contributory negligence and assumed the risk. He received no warning until just before he was engulfed in the falling coal. It cannot be said, as a matter of law, that the warning was sufficient or timely given. It is far from conclusive that the deceased heard the caution to which the foreman testified, who only testified in this respect that he believed the deceased could hear him, as he (the foreman) was right beside him, but he made no reply. Even if the deceased did hear what the foreman said, it was, nevertheless, a question for the jury whether he was guilty of contributory negligence, and whether he knew and also appreciated the dangers to which he was exposed. It is to be noted in this connection that the warning was to the effect not to go out too far, and that the deceased did not go out any further, but kept his position with one foot on the ladder.

2. It is urged that the damages are excessive, the jury having given the full amount allowed by the statute. We are not impressed with the justice of this claim, in view of the age, vigor, and character of the deceased, and the fact that the beneficiaries of the verdict are his young widow and infant child, and hold that the damages awarded are not excessive.

3. It is urged that the defendant was entitled to a new trial on account of the alleged misconduct of plaintiff's counsel. Whether a new trial should be granted on this ground was a question addressed to the discretion of the trial court. The discretion was properly exercised.

4. Errors are assigned as to the rulings of the trial court as to the admission of evidence. We have considered them, and are of the opinion that no errors in this respect were made which would entitle the defendant to a new trial.

5. Errors are also assigned as to the court's instructions to the jury. The charge of the court, considered as a whole, was fair and correct. The defendant's requested instruction relating to the assumption of the risk by the plaintiff was properly refused, because all that the defendant was entitled to have said on the subject was substantially covered by the general charge. Besides, the request, if given, would have been liable to mislead the jury; for it did not directly state that the deceased must have known and appreciated the danger in order to charge him with an assumption of the risks.

Order affirmed.